FILED BY LS D.C.

Aug 30, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

ERIC SMITH,

        Plaintiff,

A & ASSOCIATES, INC., a Florida corporation,

        Defendant.

19-CIV-62180-BLOOM/VALLE

**CIVIL ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT

1.     I, ERIC SMITH, Plaintiff, bring this action against Defendant, A & ASSOCIATES, INC., to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.     Through this action, Plaintiff seeks injunctive relief to halt the sending of unsolicited telemarketing text messages which promote and encourage the purchase of goods or services by Defendant, and to secure redress for injury by its conduct which violates the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 et seq. Plaintiff alleges as follows upon

1

personal knowledge, experience, investigation, and, as to all other matters, upon information and belief.

3.      Defendant, A & ASSOCIATES, INC.  is a Florida corporation which claims that its "undeniable success" as a temporary staffing agency has allowed it to become one of the largest  "people providers " in the State of Florida and it serves hundreds of corporate clients and job seekers,

4.      In other words, Defendant acts as a broker between individuals seeking employment and businesses seeking employees, charging a fee to both parties.

5.      Defendant conducted, and continues to conduct,  a wide-scale telemarketing text message campaign that features the repeat sending of unsolicited text messages to the cellular telephones of consumers, specifically Plaintiff, to promote its business services.

6.      Defendant conducted, and continues to conduct its telemarketing campaign without obtaining prior consent from the recipients, specifically Plaintiff, through the use of an automatic telephone dialing system ("ATDS")

7.      As part of Defendants telemarketing campaign, Defendant repeatedly sent, or caused to be sent, numerous unsolicited, invasive telemarketing text messages to the cellular telephone number of Plaintiff which ends in 2289 ("The 2289 Number"), without regard to:

1. Plaintiff's cellular telephone number being registered on the National-Do-Not-Call Registry,

2. Plaintiff never providing any prior consent to receive such telemarketing texts, through the use of and ATDS or otherwise, to his cellular telephone, from Defendant, and;

3. Plaintiff's written request to Defendant to longer send telemarketing text messages to his cellular telephone through the use of ATDS, or otherwise—**all in direct violation of the TCPA.**

8.      By sending the text messages at issue in this Complaint, Defendant caused Plaintiff actual harm and cognizable legal injury. This includes invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Plaintiff's daily life, a loss of value realized for the monies paid to Plaintiff's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Plaintiff's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

9.      In response to Defendant's unlawful conduct, Plaintiff seeks injunctive relief requiring Defendant to cease from continuing to send any further unsolicited telemarketing text messages to Plaintiff's cellular

telephone. Plaintiff  also seeks statutory damages and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.

11.     Jurisdiction is also proper under 28 U.S.C. § 1331(a) Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each text in violation of the TCPA, which, when aggregated, exceeds the $75,000.00 (seventy-five-thousand dollar) threshold for federal court jurisdiction under 28 U.S.C. § 1331(a).

12.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because (1) Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, (2) Defendant provides and markets its services within this district, (3) Defendant has a corporate office within this district (4) Defendant has designated an agent for service of process in the State of Florida; Defendant has thereby established sufficient contacts, thus, subjecting itself to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and within this judicial district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

13.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

14.     Defendant is a corporation incorporated and existing under the laws of the State of Florida with its principal place of business located at 951 Sansbury Way West Palm Beach, Florida 33411. Defendant is registered to do and is doing business in Florida, including in the Southern District.

15.     Further, Defendant directs, markets and provides its tortious business activities throughout the State of Florida.

16.     Defendant's registered agent for service of process is Wayne M. Richards located at 951 Sansbury Way West Palm Beach, Florida 33411.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

17.     The TCPA was passed into law in 1991. The TCPA regulates and restricts the use of automatic telephone equipment.

18.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

19.     In an action under the TCPA, a plaintiff must only show that the defendant "called a  number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.,* 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd,* 755 F.3d 1265 (11th Cir. 2014).

20.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

21.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

22.     The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual. *See 2012 FCC Order, 27 FCC Rcd. at 1839* ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls....").

23.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd 14014 (2003).

24.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

25.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'*clear and conspicuous disclosure of* the consequences of providing the requested consent ...and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

26.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate

purpose of the communication. *See Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

27.    "Neither the TCPA nor its implementing regulations '*require an explicit mention of a good, product, or service' where the implication of an improper purpose is clear from the context.*'" *Id. (citing Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

28.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 *FCC Rcd.* 14014, ¶¶ 139–142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.

29.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd.* 14014, ¶ 136 (2003).

30.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd.* 7961, 7991–92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

31.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.,* 2014 WL 6757978, at \*3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending a telemarketing text message).

32.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.,* No. 14-55980, 2017 U.S. App. LEXIS 1591, at \*12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

33.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." See Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014) (citing In re Joint Petition Filed by Dish Network, LCC, 28 FCC. Rcd. 6574, 6574 (2013)). Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.,* 582 F. App'x 678 (9th Cir. 2014) (citing 28 F.C.C.

Rcd. at 6590 n. 124). A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.,* 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

### FACTUAL ALLEGATIONS

34.    At all times relevant, Plaintiff was a citizen of the State of Florida, Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

35.    Defendant, is a Florida corporation that promotes, markets and sells its temporary staffing services to both individual job seekers and businesses throughout the State of Florida.

36.    Upon information and belief, Defendant, in an attempt to entice and encourage Plaintiff to attend its sales conferences, and to ultimately buy into Defendant's services, Defendant surreptitiously obtained the cellular telephone number of Plaintiff, then proceeded to send or cause others to send a continuous stream of unsolicited  telemarketing text messages to Plaintiff's cellular telephone using an ATDS.

37.    Defendant's text messages encourage the recipient to attend promotional meetings to market and ultimility persuade Plaintiff  to buy into its services.

38.     In an attempt to dupe recipients, specifically Plaintiff, to attend such events, Defendant used misleading language to describe its promotional sales events – these events are described by Defendant as "orientations" in the text of the unsolicited telemarketing text messages Defendant sent to Plaintiff's cellular telephone

39.     The purpose of Defendant's attempts to entice the recipients of its telemarketing text messages and specifically Plaintiff to attend one or all of its orientations was to promote and market Defendendant's business services.

40.     According to the TCPA, a text message *does not require* an explicit mention of a good, product, or service *where the implication of an improper purpose is clear from the context* in order for it to constitute as telemarketing.

41.     Further, the FCC clarifies that a call shall be considered telemarketing whether or not  recipients are encouraged to purchase, rent, or invest in property, goods, or services *during the call or in the future.* Therefore, *all* of the texts sent by Defendant to Plaintiff's cellular telephone constitute telemarketing because the underlying purpose of each and every message was to encourage Plaintiff to ultimilty buy into its services and were and are part of Defendant's overall telemarketing campaign.

42.     Plaintiff has never conducted business with Defendant and has no prior or current business or non business relationship with Defendant.

43.     Plaintiff never consented to receive telemarketing text messages from the Defendant, and is incognizant by the means in which Defendant ascertained his cellular telephone number.

44.     Unsolicited telemarketing messages and telephone calls, commonly referred to as robocalls, have become a national epidemic and are the leading consumer complaint made to the Federal Communications Commission and the Federal Trade Commision, as Defendant and other telemarketers have increased the amount of spam calls and texts to consumers exponentially in recent years.

45.     At all times relevant to this complaint, Plaintiffś cellular telephone number was registered on the National Do Not Call Registry.

46.     Upon information and belief, Defendant and/or its agent lacks a sufficiently adequate system for limiting autodialed text messages to cellular phones for which it does not have prior express permission to call. These are unsolicited text messages sent for the purpose of marketing to potential customers.

47.     Upon information and belief, Defendant fails to maintain a list of persons who request not to receive unsolicited telemarketing text messages.

48.     On or about July 25th 2017 at approximately 9:40 AM, Defendant, or Defendant's agent, text messaged Plaintiff for the second time, using an ATDS, for purposes of selling goods or services:

"(AASTAFFING) Good Morning A&A Champions! Just a friendly reminder that orientation sessions begin today at Benoist Farms ES from 12:30 PM to 2:30PM" [Tuesday July 25, 2017 9:40AM]"

49.    Each and every unsolicited telemarketing text message Defendant sent or caused to be sent to Plaintiff's cellular telephone begins with the generic and impersonal text (AASTAFFING), further demonstrating the use of an ATDS in the sending of the messages.

50.    While Defendant conducts business under trade name AA STAFFING., Defendant has never filed a Fictitious Name Registration for the trade name AA STAFFING  with the Florida Department of State– in direct violation of The State of Florida's Fictitious Name Act (s.865.09, F.S.).

51.    At the time of filing of this Complaint with the Court, Defendant has sent, or caused to be sent, Plaintiff no less than **37 (THIRTY–SEVEN)** unsolicited telemarketing text messages to Plaintiff's cellular telephone, through the use of an ATDS.

52.    The unsolicited telemarketing text messages sent to Plaintiff's cellular telephone, were sent from the  SMS short code 80123.

53.    The SMS short code 80123 owned and/or operated by Defendant or its agent.

54.    The unsolicited telemarketing text messages Defendant sent, or caused to be sent to Plaintiff's cellular telephone do not incorporate any

13

instructions on how the recipient may opt out from receiving further telemarketing messages – in direct violation of 47 U.S.C. § 227(c)(1) and 47 C.F.R. § 64.1200(b)(3).

55.    On or about October 29th 2019 Plaintiff sent Defendant a letter to Defendant's email address Admin@AssociateStaffing.com.

56.    Plaintiff obtained Defendant's email address from Defendant's website https://associatestaffing.com/ after conducting a Google search for the term "AASTAFFING", which appears in each and every spam text sent by Defendant to Plaintiff's cellular telephone.

57.    The letter Plaintiff sent to Defendant informed Defendednt the unsolicited telemarketing text messages being sent to his cellular telephone were in direct violation of the TCPA and requested that Defendant cease from sending him any further text messages

58.    Defendant ignored Plaintiff's request and continues to send, or directs others to send unsolicited telemarketing text messages to Plaintiff's cellular telephone.

59.    Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services.

60.    Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

61.     At no point in time did Plaintiff provide Defendant with consent, to be contacted using an ATDS, or otherwise.

62.     Plaintiff is the subscriber and sole user of The 2289 Number, and is financially responsible for phone service to The 2289 Number.

63.     The generic and impersonal nature of Defendant's text messages, the utilization an SMS short code in the sending of the messages and the high volume of messages sent by Defendant and/or its agent demonstrates that Defendant used an ATDS, in the transmittal of the messages.

64.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

65.     Defendant's violations of the TCPA were knowing and willful.

66.     Defendant's unsolicited text messages caused Plaintiff actual damage and cognizable legal injury. This includes invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Plaintiff's daily life, a loss of value realized for the monies paid to Plaintiff's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Plaintiff's cellular telephone, including the related data,

software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

### FIRST CAUSE OF ACTION
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

67.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

68.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1)(A)(iii).

69.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." See, e.g., Hicks v. Client Servs., Inc., No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

70.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephone of Plaintiff

71.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular telephone of Plaintiff when the calls were made.

72.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular telephone of Plaintiff without his  prior express written consent.

73.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that constituted an automatic telephone dialing system, therefore,the violations were knowing and/or willful.

74.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff  was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff  also entitled to an injunction against future calls.

75.     Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls to his cellular telephone the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE,** Plaintiff  prays for the following relief:

a. An injunction prohibiting Defendant from sending text messages using an ATDS, or otherwise, to the cellular telephone of Plaintiff in the future,

b.  An award of actual and statutory damages,

c. Reasonable attorney's fees and costs, and;

d. Such further and other relief the Court deems reasonable and just.

## SECOND CAUSE OF ACTION
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

76.     Plaintiff re-alleges and incorporate the foregoing allegations as if fully set forth in paragraphs 1-66.

77.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

78.     Defendant knew that it did not have prior express consent to send these text messages, and knew or should have known that its conduct was a violation of the TCPA.

79.     Because Defendant knew or should have known that Plaintiff  had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff  pursuant to § 227(b)(3) of the TCPA.

80.    As a result of Defendant's violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff prays for the following relief:

      a. An injunction prohibiting Defendant from sending text messages using an ATDS, or otherwise, to the cellular telephone of Plaintiff in the future,

      b.  An award of actual and statutory damages,

      c. Reasonable attorney's fees and costs, and;

      d. Such further and other relief the Court deems reasonable and just.

### THIRD CAUSE OF ACTION
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

81.    Plaintiff realleges and and incorporate by reference each and every allegation set forth in paragraphs 1–66.

82.    Defendant made unsolicited and unwanted telemarketing calls to the cellular telephone number belonging to Plaintiff in an effort to sell its products and services after Plaintiff informed Defendant that he never requested to receive telemarketing text messages from Defendant and requested that Defendant to cease from the sending of such texts.

83.     Through the sending of unsolicited telemarketing text messages to Plaintiff's cellular telephone, through the use of and ATDS, after he requested to no longer receive such texts, Defendant violated Section 227(b)(1)(A)(iii) of the TCPA by continuing to send such texts without prior express consent.

84.     As a result of Defendant's unlawful conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff suffered actual harm and, under Section 227(b)(3)(B) is entitled to a minimum of $500.00 in damages for each violation. Plaintiff  also entitled to an injunction against future calls.

85.     Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls to his cellular telephone the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff prays for the following relief:

a.  An injunction prohibiting Defendant from sending text messages using an ATDS, or otherwise, to the cellular telephone of Plaintiff in the future,

b.  An award of actual and statutory damages,

c. Reasonable attorney's fees and costs, and;

d. Such further and other relief the Court deems reasonable and just.

**FOURTH CAUSE OF ACTION**
**Knowing and/or Willful Violations of the Telephone Consumer Protection**
**Act, 47 U.S.C. § 227 et seq.**

86.    Plaintiff realleges and and incorporate by reference each and every

allegation set forth in paragraphs 1-66.

87.    The TCPA, specifically 47 U.S.C. § 227(c), provides that any

"person who has received more than one telephone call within any 12-month

period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may  bring a private action based on a

violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which

they object.

88.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

provides that "[n]o person or entity shall initiate any telephone solicitation"

to "[a] residential telephone subscriber who has registered his or her

telephone number on the National Do Not Call Registry of persons who do not

wish to receive telephone solicitations that is maintained by the federal

government."

89.    47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d)

"are applicable to any person or entity making telephone solicitations or

telemarketing calls to wireless telephone numbers to the extent described in

the Commission's Report and Order, CG Docket Case 4:16-cv-11010-DHH

Document 1 Filed 06/01/16 Page 15 of 22 16 No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'" (the "Report and Order").

90.     The Report and Order, in turn, states as follows: The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do–not–call lists. For the reasons described above, Plaintiff concludes that these rules apply to calls made to wireless telephone numbers.

91.     Defendant violated § 64.1200(c) by sending, or causing to be send telemarketing text messages to the cellular telephone number of Plaintiff, who had registered his telephone number on the National Do Not Call Registry.

92.     As a result of Defendant's unlawful conduct and pursuant to Section 227(b)(1)(A)(iii) of the TCPA, Plaintiff suffered actual harm and, under Section 227(b)(3)(B) is entitled to a minimum of $500.00 in damages for each violation. Plaintiff  also entitled to an injunction against future calls.

93.     Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls to his cellular telephone the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff prays for the following relief:

a. An injunction prohibiting Defendant from sending text messages using an ATDS, or otherwise, to the cellular telephone of Plaintiff in the future,

b.  An award of actual and statutory damages,

c. Reasonable attorney's fees and costs, and;

d. Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

94.    Plaintiff hereby demands a trial by jury.

### DOCUMENT PRESERVATION DEMAND

95.    Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the Plaintiff  and the communication or transmittal of the text messages and calls as alleged herein.


Dated: August 26, 2019

Respectfully Submitted,

/s/ Eric Smith
**ERIC SMITH**

Eric Smith
*Pro se Plaintiff*
520 North Ocean Blvd. Unit 19
Pompano Beach, FL 33062
(Telephone) 954.288.2265

*(Email) easmith.fl@gmail.com*